[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11953
_____

D.C. Docket No. 1:08-cv-23343-JIC

MAPLEWOOD PARTNERS, L.P.,
MAPLEWOOD MANAGEMENT, L.P.,
MAPLEWOOD HOLDINGS, LLC,
individually and on behalf of their members,
partners, affiliates, and subsidiaries,

Plaintiffs - Appellants,

versus

INDIAN HARBOR INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 30, 2016)

Before ED CARNES, Chief Judge, ANDERSON, Circuit Judge, and TITUS,[*] District Judge.

PER CURIAM:

MapleWood Partners, MapleWood Management, and MapleWood Holdings (MapleWood) appeal from the district court's grant of summary judgment in favor of Indian Harbor Insurance Company. MapleWood contends that Indian Harbor breached an insurance policy by not paying for losses MapleWood incurred in several lawsuits.

MapleWood took out a professional liability insurance policy from Indian Harbor Insurance Company. That policy required Indian Harbor to pay any defense expenses and settlement fees resulting from lawsuits against MapleWood. It also included a clause that subrogated Indian Harbor to "all of the potential or actual rights of recovery" of MapleWood. Separate from its insurance policy, MapleWood also entered into an agreement with a company called Julio & Sons. Under that agreement MapleWood agreed to provide advisory services to Julio & Sons in exchange for fees. The agreement also provided that Julio & Sons would defend and indemnify MapleWood "from and against all losses, claims, damages,

---

[*] Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

2

expenses, or liabilities (including attorneys' fees and expenses)" that MapleWood incurred in lawsuits against it because of its association with Julio & Sons.

Three lawsuits arising out of MapleWood's association with Julio & Sons were filed against MapleWood. Those lawsuits were either settled or dismissed. Although MapleWood sought coverage from Indian Harbor for losses from the three lawsuits, Julio & Sons ended up paying the vast majority of MapleWood's defense expenses and settlement fees on MapleWood's behalf under the agreement's indemnity provision.

MapleWood sued Indian Harbor for breach of contract based on Indian Harbor's failure to pay the losses from the three lawsuits. It claimed about $4,000,000 in damages as a result of Indian Harbor's alleged breach of the insurance policy. The district court granted summary judgment to Indian Harbor, after concluding that under Florida law,[1] allowing MapleWood to recover under the policy would give it an improper double recovery because Julio & Sons had already paid the losses.

We review de novo a district court's grant of summary judgment. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989). We can affirm that judgment "on any ground that appears in the record, whether or

---

[1] The parties agree that Florida law applies to this case.

3

not that ground was relied upon or even considered" by the district court. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

This case is controlled by Continental Casualty Co. v. City of South Daytona, in which a little league group contracted with the city to use the city's facilities. 807 So. 2d 91, 92 (Fla. 5th DCA 2002). The little league agreed to defend and indemnify the city for any claims against the city that arose from the little league's use of those facilities. Id. An injured coach sued the city, and its insurer ended up defending the action. Id. The city then sued the little league's insurance carrier for costs and attorney's fees that the city and its insurer incurred in defending against the lawsuit, arguing that the indemnification agreement imposed liability on the little league's carrier. Id. The court agreed, stating that the parties had a "specific and contractual obligation of indemnification in favor of the [c]ity" that imposed on the little league the "primary obligation" to defend the city. Id. at 93. As a result the city and its insurer were entitled to recover costs and attorney's fees from the little league's carrier. Id.

The Continental Casualty decision is on point. Like the city and the little league, MapleWood and Julio & Sons had a contractual agreement of indemnification that shifted liability to Julio & Sons. As a result Julio & Sons had the "primary obligation" to pay the losses MapleWood suffered in the three lawsuits, which Julio & Sons did. See id.; see also Aetna Ins. Co. v. Fid. Cas. Co.

4

of N.Y., 483 F.2d 471, 473 (5th Cir. 1973) (holding that under Florida law an indemnity agreement controlled "all the rights and obligations of the parties and their privies (the insurers)," and the fact that the parties carried insurance did not "detract from or modify" their indemnity agreement).

MapleWood's counterarguments are unpersuasive. It argues that the indemnification provision in the agreement was never intended to cover losses covered by an insurance policy. Nothing in the agreement's text supports that argument. MapleWood also asserts that Continental Casualty is off point because the city's insurer defended the city, despite the insurer's position that the little league group should have defended the city. See Cont'l Cas. Co., 807 So. 2d at 92. Accordingly, MapleWood asserts that Indian Harbor should have covered MapleWood's losses, even if Indian Harbor believed that Julio & Sons was ultimately responsible for them, and then pursued its subrogation right against Julio & Sons. However, MapleWood was not left alone as the losses were piling up. Julio & Sons shouldered those losses, which meant that MapleWood incurred none. At this point, requiring Indian Harbor to pay MapleWood and then exercise its subrogation right against Julio & Sons to recoup those damages would simply put all three entities back in the same position they are in now.[2] See Wal-Mart

---

[2] MapleWood asserts that Indian Harbor cannot now pursue its subrogation right because of its alleged breach of the insurance policy by failing to pay for all of the losses incurred as a result of the three lawsuits against MapleWood. But MapleWood does not cite any authority to

5

Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 594 (8th Cir. 2002) ("Generally, courts will not allow parties to engage in circuitous action when the foreseeable end result is to put the parties back in the same position in which they began.").

Finally, MapleWood also challenges a discovery order requiring it to produce (among other documents) an email from its attorney.  It contends that the disclosure of that email violated attorney-client privilege and the work-product doctrine.  We need not address that issue because "we will not overturn discovery rulings unless it is shown that the District Court's ruling resulted in substantial harm to the appellant's case."  Iraola & CIA, S.A. v. Kimberley-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (quotation marks omitted).  As our analysis shows, the resolution of this appeal does not require any reference to that email.  As a result MapleWood cannot show that the disclosure of that email substantially or even insubstantially harmed its case.

**AFFIRMED.**

---

support that assertion, so it is abandoned.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he . . . raises it in a perfunctory manner without supporting arguments and authority."); United States v. McKinley, 732 F.3d 1291, 1295 n.1 (11th Cir. 2013) (deeming an issue abandoned when a party "did not elaborate any argument regarding [the issue] in his initial brief or cite any authority relevant to such an argument").